BILVIA SANDOVAL, Employee, Plaintiff,
v.
PILLOWTEX CORP., Employer, CRAWFORD & COMPANY, Carrier, Defendants.
No. COA07-474
Court of Appeals of North Carolina.
Filed November 20, 2007
This case not for publication
Kathleen G. Sumner, for plaintiff-appellant.
Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Joel K. Turner, for defendants-appellees.
TYSON, Judge.
Bilvia Sandoval ("plaintiff") appeals from the Full Commission of the North Carolina Industrial Commission's ("the Commission") opinion and award enforcing the terms of the parties' mediated settlement agreement. We affirm.

I. Background
In September 2002, plaintiff was employed by Pillow tex Corporation ("defendant") as a spinning machine operator making an average weekly wage of $438.46. On 31 July 2003, plaintiff fileda Form 18 alleging she had injured her back while "leaning over a steel bar and reaching to pull out a spool of thread[]" on 6 September 2002. Defendant responded that plaintiff had provided late notice of her claim, asserted she did not sustain a compensable injury by accident, and denied her claim for benefits. On 30 September 2003, plaintiff requested her claim be assigned for hearing. The Commission ordered the parties to attend mediation prior to proceeding to hearing.
On 27 April 2004, the parties attended a mediated settlement conference. Plaintiff was accompanied by a translator at the mediation conference. At mediation, the parties executed a settlement agreement which provided, inter alia: (1) "plaintiff will execute a clincher agreement/general release/other agreement, in consideration of the sum of $7,500.00 . . . .;" (2) plaintiff will pay all related unpaid medical bills; (3) defendant's attorney "will prepare and submit for approval to the [p]laintiff the settlement document(s) . . . .;" and (4) defendant will advance plaintiff $1,500.00 upon execution of the settlement document. On 30 April 2004, defendant forwarded to plaintiff a Compromise Settlement Agreement drafted in accordance with the parties' mediation agreement. Plaintiff refused to sign the agreement.
Defendant moved to enforce the 27 April 2004 mediated settlement agreement. On 30 January 2006, the deputy commissioner filed his opinion and award concluding that "[a]t the mediation . . . there was no meeting of the minds due to [plaintiff] not understanding the terms or essence of the alleged settlement agreement reached . . . ." Defendants appealed. On 2 February 2007, a divided panel of the Commission enforced the terms of the parties' mediated settlement agreement. Plaintiff appeals.

II. Issues
Plaintiff argues the Commission erred by: (1) entering findings of fact numbered 3, 4, 5, 6, 13, 14, 15, and 22; (2) failing to make appropriate findings of fact; and (3) enforcing the terms of the mediated settlement agreement.

III. Standard of Review
Our Supreme Court has stated:
[W]hen reviewing Industrial Commission decisions, appellate courts must examine "whether any competent evidence supports the Commission's findings of fact and whether [those] findings . . . support the Commission's conclusions of law." The Commission's findings of fact are conclusive on appeal when supported by such competent evidence, "even though there [is] evidence that would support findings to the contrary."
McRae v. Toastmaster, Inc., 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004) (quoting Deese v. Champion Int'l Corp., 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000); Jones v. Myrtle Desk Co., 264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965)). "[T]he full Commission is the sole judge of the weight and credibility of the evidence[.]" Deese, 352 N.C. at 116, 530 S.E.2d at 553. The Commission's mixed findings of fact and conclusions of law and its conclusions of law applying the facts are fully reviewable de novo by this Court. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982); Cauble v. Soft-Play, Inc., 124 N.C. App. 526, 528, 477 S.E.2d 678, 679 (1996), disc. rev. denied, 345 N.C. 751, 485 S.E.2d49 (1997).

IV. Findings of Fact
Plaintiff argues the Commission's findings of fact numbered 3, 4, 5, 6, 13, 14, 15, and 22 are not supported by any competent evidence. We disagree.
The challenged findings of fact state:
3. Plaintiff testified that on September 5, 2002, she leaned over a metal bar to pick up a bobbin that had fallen off a spool, and she felt pain in her back on her left side.
4. Plaintiff testified that she did not immediately report the incident to her supervisor. Plaintiff indicated that she originally thought the back pain was related to constipation.
5. Plaintiff testified that the next day she told her supervisor, Helen, about the incident. Plaintiff's production was poor on her shift which began on Saturday, September 7, 2002, and ended Sunday, September 8, 2002. Plaintiff did not work on Monday, September 9, 2002, or Tuesday, September 10, 2002. On Wednesday, September 11, 2002, plaintiff's supervisor reprimanded her for her low production at work and told her to go to the doctor.
6. Plaintiff was seen by Kim Purcell, P.A., on Friday, September 13, 2002 with complaints of pain in her lower back for approximately two weeks, hip pain, urinary frequency and urinary hesitancy. PA Purcell's assessment was low back pain and urinary tract infection.
. . . .
13. On November 18, 2002, plaintiff indicated to Dr. Roy for the first time that her problems "may" be work related. Dr. Roy noted that plaintiff described the type of work the [sic] she was doing, and that the work may have led to the problem, but there is no description of the particular incident.
14. Plaintiff was out of work as a result of her back pain and subsequent surgery from September 16, 2002 until November 26, 2002. Plaintiff returned to work in her normal position on November 27, 2002.
15. On December 2, 2002, plaintiff told Dr. Roy that she initially felt that her back pain was related to her constipation and urinary tract infection. Plaintiff also indicated to Dr. Roy that her heavy work load appeared to worsen the back pain.
. . . .
22. Dr. Roy testified that during his treatment of plaintiff, he felt that plaintiff was able to communicate effectively in English, and he did not have any difficulty understanding plaintiff when she explained her history to him. Dr. Roy felt comfortable enough with plaintiff's English skills to allow her to sign a consent form for surgery without a translator. In addition, plaintiff had been taking English classes as part of her GED since the fall of 2003.
After a thorough review of the record on appeal, transcript, depositions, and plaintiff's medical records, we find competent evidence in the record to support the challenged findings of fact. McRae, 358 N.C. at 496, 597 S.E.2d at 700. These findings of fact support the Commission's conclusions of law. Id. This assignment of error is overruled.

V. Insufficient Findings of Fact
Plaintiff argues the Commission failed to make appropriate findings of fact based upon competent evidence presented. We disagree. "The Commission is not required . . . to find facts as to all credible evidence. That requirement would place an unreasonable burden on the Commission. Instead, the Commission must find those facts which are necessary to support its conclusions of law." London v. Snak Time Catering, Inc., 136 N.C. App. 473, 476, 525 S.E.2d 203, 205 (citations omitted), cert. denied, 352 N.C. 589, 544 S.E.2d 781 (2000).
Presuming the Commission could have made further findings of fact, such omissions are not reversible error. The Commission's findings of fact are sufficient and adequately support its conclusions of law. Id. This assignment of error is overruled.

VI. Mediated Settlement Agreement
Plaintiff argues the Commission erred by enforcing the terms of the settlement agreement when "[plaintiff] speaks Guatemalan Spanish and requires a Guatemalan Spanish speaking interpreter and understood that she was to be paid $7,500.00 per month for each of three months but the settlement agreement was in fact for only for a single payment of $7,500.00[.]" We disagree.
The Commission found as fact, inter alia:
19. On April 27, 2004, a mediation was held in this case. . . . An agreement was reached at the mediation to settle the matter for $7,500.00, with plaintiff paying the unpaid medical bills and defendants paying the mediation cost. Plaintiff was to be advanced $1,500.00 upon execution of the settlement agreement.
. . . .
22. Dr. Roy testified that during his treatment of plaintiff, he felt that plaintiff was able to communicate effectively in English, and he did not have any difficulty understanding plaintiff when she explained her history to him. Dr. Roy felt comfortable enough with plaintiff's English skills to allow her to sign a consent form for surgery without a translator. In addition, plaintiff had been taking English classes as part of her GED since the fall of 2003.
. . . .
25. The parties entered into a valid, enforceable contract following a meeting of the minds regarding the essential terms of the Agreement which were sufficiently definite and certain.
The Commission then concluded, inter alia:
4. The Memorandum of Agreement fully complies with the requirements of the Act and constitutes a valid compromise settlement agreement subject to approval by the Industrial Commission. N.C. Gen. Stat. § 97-17. Having reviewed the Final Agreement, the undersigned find it to be fair and just to all parties and hearby APPROVES the agreement.
Pursuant to N.C. Gen. Stat. § 97-80(c) (2005), "the Commission may order parties to participate in mediation . . . ." "If an agreement is reached in the mediation conference, the parties shall reduce the agreement to writing, specifying all the terms of their agreement bearing on the resolution of the dispute before the Industrial Commission, and sign it along with their counsel." Indus. Comm'n R. For Mediated Settlement and Neutral Evaluation Conferences 4(d), 2007 Ann. R. (N.C.) 679.
"All compromise settlement agreements must be submitted to the Industrial Commission for approval. Only those agreements deemed fair and just and in the best interest of all parties will be approved." Workers' Comp. R. of N.C. Indus. Comm'n 502(1), 2007 Ann. R. (N.C.) 651.
Compromise settlement agreements, including mediated settlement agreements, are governed by general principles of contract law. It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement. To be enforceable, the terms of a contract must be sufficiently definite and certain.
Lemly v. Colvard Oil Co., 157 N.C. App. 99, 103, 577 S.E.2d 712, 715 (2003) (internal quotations omitted).
It is the general rule that one who signs a contract is presumed to know its contents, and an illiterate person signing an instrument without request that it be read to him is chargeable with negligence for which the law affords no redress, unless he has been lulled into security or thrown off his guard and deceived.
Ellis v. Mullen, 34 N.C. App. 367, 370, 238 S.E.2d 187, 189 (1977) (citing W. R. Grace & Co. v. Strickland, 188 N.C. 369, 124 S.E. 856 (1924)).
Here, the Commission's findings of fact support its conclusions of law. Defendant's attorney prepared a clincher agreement and sent it to plaintiff in accordance with the signed mediation agreement. This clincher agreement contained the standard terms required by Rule 502(2) of the Workers' Compensation Rules of the North Carolina Industrial Commission.
While the better practice would be for the parties to execute a clincher agreement which contains all the required terms and language at the conclusion of the mediated settlement conference if an agreement is reached, the signed [Mediation Agreement] here fully complies with Rule 502(2) of the Workers' Compensation Rules and is a valid compromise settlement agreement subject to approval by the Industrial Commission pursuant to Rule 502(1).
Lemly, 157 N.C. App. at 104, 577 S.E.2d at 716.
The Commission did not err in enforcing the terms of the mediated settlement agreement. Competent evidence exists to support the Commission's findings of fact and these findings support the Commission's conclusion of law. Under de novo review, the Commission's conclusions of law are not erroneous as a matter of law. This assignment of error is overruled.

VII. Conclusion
Competent evidence in the record on appeal supports the Commission's findings of fact. These findings of fact support the Commission's conclusions of law. These conclusions of law are not erroneous as a matter of law. The Commission's opinion and award is affirmed.
Affirmed
Judges JACKSON and STROUD concur.
Report per Rule 30(e).